UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-232-GWU

BARBARA ROBINSON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

**INTRODUCTION**

The plaintiff had previously filed Robinson v. Apfel, London Civil Action No. 99-341 (E.D. Ky.) to appeal from the negative administrative decision on her application for Disability Insurance Benefits (DIB). After the undersigned's Memorandum Opinion, Order and Judgment of October 6, 2000, the case was returned to the agency for further consideration of the plaintiff's mental and physical impairments. After several more administrative actions, including remands by the Appeals Council, another negative administrative decision issued (Tr. 290-99) and this court issued another remand on December 6, 2007. Robinson v. Astrue, London Civil Action No. 07-43 (E.D. Ky.) (Tr. 801-9). The current negative administrative decision was issued on March 31, 2009 (Tr. 771-82), and the case is once again before the undersigned on cross-motions for summary judgment.

**APPLICABLE LAW**

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims.  See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).  Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is

unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff filed the DIB application at issue on February 13, 1995, alleging disability since October 21, 1992.  (Tr. 82-4).  Her Date Last Issued (DLI) is December 31, 1999 (Tr. 451), meaning that she was required to show disability before that date in order to be entitled to benefits.

The court previously summarized the tortuous administrative history of the plaintiff's application in its 2007 decision, which is contained in the present

transcript, and need not be repeated in detail. (Tr. 804-7). The 2007 remand noted that mental restrictions cited in the court's original remand in 2000 had not been properly dealt with. (Tr. 804-7). There was also an issue regarding pushing and pulling restrictions. (Tr. 808).

On remand, the ALJ obtained evidence from an orthopedic medical expert (ME), Dr. Charles Hancock, and additional testimony from a Vocational Expert (VE). The ALJ found that for the period at issue, Mrs. Robinson had "severe" impairments consisting of myofascial cervical and left shoulder pain syndrome, a pain disorder, and a mild to moderate depressive disorder. (Tr. 773). Based on the restrictions given by the ME and by a consultative psychological examiner, Dr. Gary Maryman, the ALJ presented a hypothetical question to the VE asking whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to lifting 20 pounds occasionally and 10 pounds frequently, and also had the following non-exertional restrictions. She: (1) had a limited ability to push, pull, and reach overhead with the left arm; (2) could frequently climb ramps and stairs, stoop, balance, kneel, and crouch; (3) could occasionally crawl; (4) could not climb ladders, ropes, or scaffolds; (5) could have only limited exposure to whole body vibration, unprotected heights, and extreme cold; (6) had a poor (defined as "limited but not totally precluded") ability to deal with the public, deal with work stresses, and understand, remember, and carry out complex job instructions; (7) had a fair (defined as "satisfactory") ability to relate to coworkers, interact with supervisors,

maintain attention and concentration, understand, remember, and carry out detailed but not complex job instructions, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability; and (8) had a good (defined as "more than satisfactory") ability to follow work rules, use judgment, function independently, understand, remember, and carry out simple job instructions and maintain her personal appearance.  (Tr. 918-19).  The VE responded that there were jobs that such a person could perform, and provided the numbers in which they existed in the state and national economies.  (Tr. 919-20).

In the alternative, if the restrictions identified in 1995 by the plaintiff's treating orthopedist, Dr. Mark Secor, were adopted, the VE testified that there would be jobs existing at the sedentary level.  Dr. Secor had limited his patient to lifting 10 pounds occasionally and 10 pounds or less frequently, with standing and walking a total of eight hours in an eight-hour work day (no more than two hours without interruption), sitting eight hours (no more than two hours without interruption), never climbing, balancing, or stooping, occasionally crouching, kneeling, and crawling, having limitations on reaching, handling, feeling, pushing, pulling, and working around temperature extremes and vibration.  (Tr. 233-4).  He also indicated that she would have a fair (defined as "seriously limited but not precluded") ability to deal with work stresses and maintain attention and concentration, "as long as work does not aggravate cervical spine or left shoulder condition."  (Tr. 235).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

As the court noted previously, the only evidence of mental restrictions was from Dr. Secor in 1995 and Dr. Maryman in 2001. (Tr. 807-8). The current administrative decision adopts the opinion of Dr. Maryman. The ALJ noted that he did so in order to give the plaintiff the benefit of the doubt, even though Dr. Maryman's decision was rendered after the DLI. (Tr. 777). He declined to accept Dr. Secor's 1995 restrictions, but in view of the fact that the VE testified that there would be jobs available with either set of mental restrictions, it is a moot point.

The plaintiff appears to focus primarily on physical issues in her brief, and notes that Dr. Secor gave other opinions at different times which were more limiting than the July, 1995 restrictions. He also indicated on occasion that she was unable to perform even sedentary work prior to the DLI. (Tr. 245, 282). He also continued to give opinions after the DLI, such as an opinion in October, 2001 which limited the plaintiff to sedentary level exertion, unlimited walking, standing, and sitting, with a change of position every 90 minutes and, inconsistently, a need to change positions at will. (Tr. 519-22). He provided another opinion limiting her to less than full-time sitting and standing in April, 2008, but this is of minimal relevance to the period at issue given the passage of time. (Tr. 886-7). The plaintiff submitted a statement from another treating source, Dr. Karen Saylor, from 2003 stating that she had not

been able to work "and has been advised to quit because this has exacerbated an old injury." (Tr. 652).

The plaintiff correctly notes that the opinion of a treating physician is entitled to controlling weight, but only where it is based on objective medical findings and are not contradicted by substantial evidence to the contrary. See, e.g., Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir. 1987). The ALJ provided several reasons for discounting the treating source opinions. He noted that a general statement that a plaintiff was unable to work or unable to perform a past job were not medical opinions but administrative findings, and not entitled to controlling weight, citing Social Security Ruling (SSR) 96-2p. (Tr. 779). He also asserted that treating physicians may express an opinion in an effort to assist a patient with whom he sympathizes. (Id.).[1] He felt that Dr. Secor's reports did not contain significant clinical and laboratory findings to support a finding of disability, and were internally inconsistent. (Tr. 779-80). Finally, he noted that other examiners and two reviewing medical experts had found substantially less limiting assessments of the plaintiff's residual functional capacity. (Tr. 780).

The court finds the rejection of the treating source opinions in the present case to be supported by substantial evidence. As Dr. Hancock, the most recent

---

[1] This rationale, by itself, would not meet the requirement for the ALJ to explain the weight given to the treating physician's opinion. Blakley v. Commissioner of Social Security, 581 F.3d 399, 408 (6th Cir. 2009).

ME, noted, x-rays and MRI reports of the plaintiff's neck and lower back showed only mild changes at best. (Tr. 818-19). He noted that the plaintiff's physical examinations did not show reflex changes and were otherwise largely normal. (Tr. 900-1). He conceded there was a mention of a sensory change, probably related to carpal tunnel syndrome, but an EMG examination in February, 2008 was normal and if the plaintiff had not had surgery for carpal tunnel syndrome, the test would most likely still show some evidence for it. (Tr. 900). Nevertheless, he would recommend that she avoid vibrations. (Tr. 911).

Dr. Hancock's conclusions appear to be consistent with the opinion of the previous ME, Dr. Arthur Lorber, who found evidence of only minimal degenerative changes of the cervical spine and opined that Dr. Secor's restrictions were groundless. (Tr. 716-18). They were consistent with a consultative examination by Dr. Bobby J. Kidd in September, 2001, at which time the physician found no positive findings to support the plaintiff's complaints and said she would have no restrictions except on prolonged overhead motion and manipulation secondary to her cervical myofascial pain. (Tr. 512-15).

Dr. Secor's examinations were not especially impressive to a lay reviewer, either. For instance, in May, 1997, his examination showed a full range of motion of the cervical spine and left shoulder with sensation and reflexes intact and only "mild" tenderness. (Tr. 384). Examinations in April, 1998 and August, 1999 were similar. (Tr. 386, 388). Given the lack of objective findings and the testimony of the

medical experts, a reasonable fact finder could have concluded that Dr. Secor was not entitled to controlling weight. In any case, as previously noted, regardless of the restrictions given by him at other times, Dr. Secor's 1995 restrictions were not inconsistent with sedentary level employment, according to the VE, and this opinion by the treating physician was given squarely within the relevant period.

      The plaintiff's only other argument is that the ALJ did not properly evaluate her subjective complaints of pain under the standards set out in <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986). Under this standard, the finder of fact must determine whether there is objective medical evidence of an underlying medical condition. If so, the issues are: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. The plaintiff asserts that she meets the second prong of the test, citing abnormalities of the cervical spine shown in a September, 2004 MRI report and lumbosacral spine abnormalities shown in a May, 2003 x-ray. (Tr. 887). Apart from the fact that the reports were generated well after the DLI, they show, as previously discussed, what appear to be only minimal changes. The MRI report refers to "tiny posterior disc herniations without evidence of associated spinal stenosis." (Tr. 661). The x-ray referred only to "mild" changes. Dr. Hancock discussed the findings at length in his testimony and stated that they did not support her subjective

complaints of pain, and that although individual reactions to pain could differ, he did not believe the plaintiff's condition could result in incapacitating pain. (Tr. 900, 913). Therefore, the finder of fact could reasonably have concluded that the <u>Duncan</u> test was not met.

    The decision will be affirmed.

    This the 7th day of June, 2011.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**